**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
======================================X
**JUAN P. ORTIZ and EMMY ZAPATA VALLEJO,**        Case No.: 1:24-cv-06148-VSB

          **Plaintiffs,**                **MEMORANDUM OF LAW**

  **-against-**

**DOT FOODS INC., GABRIEL JAMEER TATE**
**and BENJAMIN SANTIAGO ROLDAN,**

          **Defendants.**
======================================X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

**I.      INTRODUCTION**

The instant action stems from an August 3, 2023 motor vehicle accident that took place in Westchester County, New York, on August 3, 2023, involving defendant motorists Benjamin Santiago Roldan ("Roldan"), in whose vehicle plaintiffs were traveling as passengers, and Gabriel Jameer Tate ("Tate"), a Delaware citizen, who was operating a vehicle registered to his then-employer, defendant Dot Foods Inc. ("Dot Foods"), which is an Illinois citizen.

Plaintiffs, who are citizens of New York for purposes of diversity, duly filed suit against defendants in the Supreme Court of the State of New York, Bronx County, on July 8, 2024.

While there is no dispute that defendant Roldan was a resident of Delaware at the time of the August 3, 2023 accident, it is respectfully submitted that defendants Tate and Dot Foods have failed to carry their initial burden on removal of demonstrating, by a preponderance of competent evidence, that defendant Roldan was domiciled in Delaware as of July 8, 2024, when plaintiffs instituted this lawsuit. Having failed to do, it is respectfully submitted that remand should follow.

Even defendants had met their initial burden, which they did not, it is respectfully submitted that remand would, nevertheless, remain appropriate, as the totality of the record before this Court – as set forth in detail in the accompanying attorney affirmation in support – clearly and convincingly demonstrates that defendant Roldan has been domiciled in New York since at least September 1, 2023.

Had the removing defendants conducted a reasonable inquiry into the viability of their removal notices, these circumstances would have become painstakingly clear. Instead, the removing defendants chose to advance tenuous jurisdictional claims, absent appropriate investigation, at the expense of the time, energy, and resources of both your affirmant and this Court. Given these circumstances, plaintiffs' respectfully request leave from this Court to move for appropriate Rule 11 sanctions against the removing defendants and their attorney – who has steadfastly refused consent to remand, even after being presented by your affirmant with the overwhelming record evidence before this Court.

## II. LEGAL ARGUMENT

### A. STANDARD OF REVIEW

"It is well-established that the party asserting federal jurisdiction bears the burden of establishing jurisdiction, and it must prove jurisdiction by a preponderance of evidence." <u>Greer v. Carlson</u>, 1:20-cv-05484 (LTS)(SDA), 2020 WL 8340068 at *2 (S.D.N.Y. 2020) (emphasis added).. "Diversity jurisdiction requires that all of the adverse parties in a suit . . . be completely diverse with regard to citizenship." <u>Young v. Century House Historical Society</u>, 117 F.Supp.2d 277, 280 (N.D.N.Y. 2000) (internal quotation and citations omitted). Therefore, "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." <u>Powers v. Roman Catholic Diocese of</u>

Rockville Centre, 19-cv-4738 (MKB) (SMG), 2020 WL 7130733 at *3 (E.D.N.Y. 2020).

"For purposes of diversity jurisdiction, citizenship of individual parties depends upon their places of domicile." Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 03-civ-10333 (CSH), 2006 WL 300477 at *1 (S.D.N.Y. 2006).   More specifically, citizenship of an individual party "depends on his domicile **at the time the legal action is commenced.**" Greer, supra, 2020 WL 8340068 at *3.

"Domicile has been described as the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Korb, supra, 2006 WL 300477 at *1 (internal quotation and citations omitted). In other words, "**[d]omicile requires: (1) the party's physical presence in the state; and (2) the intent to remain in that state indefinitely.**" Korb, supra, 2006 WL 300477 at *1 (quoting National Artists Management Company, Inc. v. Weaving, 769 F.Supp. 1224, 1227 (S.D.N.Y. 1991)) (emphasis added).   "Either without the other is insufficient." Palazzo v. Delmage, 232 F.3d 38, 42 (2d Cir. 2000).  So while a party may have multiple residences, he or she may have only have one domicile. Young, supra, 117 F.Supp.2d at 280 (citations omitted).

To determine domicile, "[a] court must consider the entire course of a person's conduct in order to determine the relevant intent." Korb, supra, 2006 WL 300477 at *1 (citation omitted). "Factors that courts often consider include: voting registration and voting practices, **location of** real and **personal property**, location where taxes are paid, **location of brokerage and bank accounts**, driver's and other licenses, membership in churches, clubs and associations, whether the person owns or rents in his place of residence, and **locations of the person's physician**, lawyer, accountant, dentist, or stockbroker." Id. (citations omitted).  "A totality of the evidence approach is called for, and no single factor is conclusive . . .." Id. (internal quotation and citation omitted).

Therefore, to carry its initial burden, the party asserting diversity jurisdiction must demonstrate complete diversity between the adverse parties, by establishing their domiciles as of the time of filing of the Complaint, by a preponderance of the evidence. Finnegan v. Long Island Power Authority, 409 F.Supp.3d 91, 97 (E.D.N.Y. 2019) (citing Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 324 (2d Cir. 2001)).

Should the party asserting diversity jurisdiction fail to carry this initial burden – only then does the challenger assume the burden of proving that there has been a change in [the domicile of a party that destroys complete diversity]." Finnegan, supra, 409 F. Supp.3d at 97. *See also*, Herrick Co., supra, 251 F.3d at 324 ("[T]he party seeking to challenge diversity by alleging a change of domicile does not . . . bear the burden of proving that change if the party seeking to establish diversity has not carried its (prior) burden of establishing a specific initial domicile from which the change would be a departure."). To do so, the challenger "has the burden of proving the require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence." Greer, supra, 2020 WL 8340068 at *3 (internal quotation and citations omitted).

**B. THIS ACTION SHOULD BE REMANDED BECAUSE THE REMOVING DEFENDANTS HAVE FAILED TO CARRY THEIR INITIAL BURDEN OF ESTABLISHING COMPLETE DIVERSITY AS OF THE FILING OF THE COMPLAINT, BY A PREPONDERANCE OF COMPETENT EVIDENCE.**

Although the removing defendants were required to demonstrate complete diversity of citizenship between the adverse parties, by establishing their respective domiciles, by a preponderance of evidence, as of the time of filing of the Complaint, they have inexplicably filed Notices of Removal in this action which fail to in any way establish that defendant Roldan's citizenship as of July 8, 2024.

The removing defendants instead contend **"upon information and belief"** that defendant Roldan was domiciled in Delaware as of July 8, 2024, based solely upon the Delaware residential address listed for defendant Roldan in the Certified Police Accident Report from nearly a year earlier, when the subject accident occurred. The tenuous nature of this contention is underscored by the removing defendants' inclusion of the preceding phrase "upon information and belief" – which is notably absent from the removing defendants' classifications of citizenship for the remaining parties hereto.

Indeed, the removing defendants submit absolutely zero competent proof to support the supposed notion that defendant Roldan was ever domiciled in Delaware (especially considering that Roldan lived in the Bronx prior to moving to Delaware), let alone as of July 8, 2024. (*See* National Artists Management Co., Inc. v. Weaving, 769 F.Supp. 1224, 1229 (S.D.N.Y 1991)).

Applicable law makes clear that remand is appropriate, where, as here, a party's notice of removal and the underlying state-court record fail[] to establish whether the parties to the action were completely diverse." Platinum-Montaur Life Sciences, LLC v. Naviea Biopharmaceuticals, Inc., 943 F.3d 613, 618 (2d Cir. 2019).

In Platinum-Montaur Life Sciences, *supra*, the plaintiff sued defendant Navidea in state court to collect on a debt. Navidea thereafter removed to the S.D.N.Y on the purported basis of diversity jurisdiction, without fully specifying the citizenship of the plaintiff LLC and its members. In light of same, the district court ordered the parties to proceed with informal jurisdictional discovery, which failed to definitively determine whether any members of the plaintiff LLC had citizenship which would destroy diversity. The district court nevertheless allowed the case to proceed to the merits, determining that there wasn't "a good faith basis to believe that there [was] not complete diversity," and ultimately entered judgment in favor of defendant. Id. at 615-116.

On appeal, the Second Circuit held that the district court had erred by proceeding to the merits of the case, insofar as "none of the underlying state-court pleadings, the notice of removal, or the record as a whole reflected that the parties were completely diverse." It specifically held that "**[a] district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence**." Id. at 618. As such, it noted that the district court had two options at that juncture – either remand to state Court for failure to establish diversity or direct further jurisdictional discovery to determine whether there was complete diversity. Ultimately, the Second Circuit vacated the district court judgment and remanded the case to the district court to conduct any further proceedings it deemed appropriate as to jurisdiction. Id. at 618-619.

A similar result should follow here, as the removing defendants have failed to demonstrate complete diversity of citizenship, by a preponderance of evidence, as of the July 8, 2024 filing of this lawsuit.  This is especially true, in light of the voluminous sworn and substantiated submissions from plaintiffs, which clearly and conclusively establish the defendant Roldan was domiciled in New York – like the plaintiffs – as of July 8, 2024.  Having failed to satisfy their initial burden, this action should, respectfully, be remanded to state court forthwith.

    **C. THIS ACTION SHOULD BE REMANDED GIVEN THE CLEAR LACK OF PERFECT DIVERSITY BETWEEN THE ADVERSE PARTIES HERETO IN LIGHT OF DEFENDANT ROLDAN'S NEW YORK CITIZENSHIP AS OF THE JULY 8, 2024 FILING OF THE COMPLAINT.**

Even assuming arguendo that defendants satisfied their initial burden through submission of the August 2023 police accident report alone, which they did not, it is respectfully submitted that remand would, nevertheless be appropriate as plaintiffs have clearly and convincingly established that defendant Roldan was domiciled in New York as of July 8, 2024.  Plaintiffs have done so through the submission of sworn testimony and affidavits from Roldan as well as a

multitude of supporting documentary evidence outlined in greater detail in the accompanying attorney affirmation. Applicable law makes clear that the totality of this evidence must not be ignored, especially in the face of tenuous claims of jurisdiction, like those advance herein.

Greer v. Carlson, supra, is particularly instructive in this regard. There, plaintiff (an alleged resident of New York and Florida) brought suit against eighteen defendants in federal court, asserting six state law causes, via an Amended Complaint filed on August 13, 2020, which based subject matter jurisdiction on diversity of citizenship. The defendants then moved to dismiss for lack of subject matter jurisdiction, alleging that two of the removing defendants were nondiverse, such that subject matter jurisdiction did not exist. Greer, supra, 2020 WL 8340068 at *1.

In briefing the issue, "[p]laintiff submitted sworn testimony and documentary evidence that he ha[d] resided in . . . Florida since May of 2019; that he has no plans of leaving Florida as his domicile; . . . that he has received medical and dental care in Florida; and that he uses a bank branch in . . . Florida." Id. at *4. Based on the totality of this evidence the Court determined that "at the time th[e] action was commenced, Plaintiff had a domicile in Florida." Id.

The Court likewise determined that defendant Carlson was domiciled in Florida as of the time the action was commenced, based upon "sworn testimony and documentary evidence that on December 19, 2019, he notified [his employer's] human resources department that his residence would change to Florida effective as of January 1, 2020; . . . that Florida is his true, fixed home and principal establishment, and that when he leaves Florida, he has the intention to return to it; . . . and that his primary care medical team is located in Florida." As such, the Court granted defendants' motion to dismiss, determining that diversity of citizenship was lacking, and that the Court, in turn, lacked subject matter jurisdiction. Id. at *5.

Similarly instructive is the decision in National Artists, supra, which involved a motion to dismiss for lack of subject matter jurisdiction brought by defendant husband (Martini) and wife (Weaving) against their former employer/business partner plaintiffs, NAMCO and its wholly-owned subsidiary Kolmar Luth Booking Company, who filed suit on March 1, 1991. National Artists, supra, 769 F.Supp. at 1226-1227. There, the viability of diversity jurisdiction hinged upon the citizenship of defendants – as there was no dispute that the plaintiff entities were citizens of New York and New Jersey. Id. Plaintiffs maintained that defendants were citizens of the of the State of Connecticut who maintained a separate residence in New York, whereas defendants maintained that they were citizens of New York as of the time of filing.

In support of diversity jurisdiction, "[p]laintiffs relied heavily on the fact that Weaving and Martini own[ed] a house in . . . Connecticut, which was purchased in 1979 (8 years before they purchased their New York City co-operative apartment), where they held their wedding reception after their 1981 marriage . . . in Connecticut, and where Weaving ha[d] spent most of her time since leaving [employment with] NAMCO." Id. at 1228. Plaintiffs also pointed out that: "defendants' phone bills . . ., indicat[ed] that many phone calls [were] made from the Connecticut home"; "[b]oth Weaving and Martini [were] registered to vote in Connecticut"; and "Weaving's personal physician [was] located in Connecticut." Id.

Defendants on the other hand relied upon personal affidavits from Weaving and Martini, which made clear that: "Both ha[d] lived and worked in Manhattan since 1976, residing in a series of rental apartments before purchasing their cooperative apartment . . . in New York City, where they have lived since 1987"; "[b]oth work in New York and spend the bulk of their time in New York, going to their Connecticut home approximately two weekends per month"; and both "receive mail, including paychecks and personal bills, at their New York address." Id. at 1229.

Against this background, the Court determined that it was "[c]lear that Weaving and Martini's Connecticut home [was] solely a weekend home", and that "even if that conclusion were not so clear, Weaving and Martini h[ad] established that they were domiciled in New York City in 1976, before the [Connecticut] house was purchased, and plaintiffs ha[d] failed to establish that their domicile has since changed to Connecticut." Id. The Court also highlighted the fact that defendants rarely vote, have family that lives in Connecticut (explaining the wedding venue), and that their other doctors, including gynecologist and dentist, are located in New York. Id. As such, the Court concluded, based on the totality of the evidence, that defendants were domiciled in New York as of the filing of the lawsuit, thereby depriving the court of diversity jurisdiction. Id.

So too here, it should, respectfully, be determined that defendant Roldan was domiciled in New York as of the July 8, 2024 filing of this action, thereby destroying complete diversity between the adverse parties hereto. Plaintiffs have submitted sworn testimony as well as an affidavit from defendant Roldan himself, making clear that he abandoned his prior residence in Delaware and permanently relocated to an apartment in the Bronx by no later than September 1, 2023; that he has not returned to Delaware at any time since; that he contacted the USPS upon moving to New York and submitted a formal change of address to his new Bronx domicile, which was acknowledged by the USPS by way of letter, dated February 9, 2024; that he retained a New York attorney to represent his interests in this action upon moving to New York; that he executed an application for no-fault benefits on September 11, 2023, which bears his Bronx address; that he began exclusively treating for his injuries with medical providers in New York and northern New Jersey as early as September 6, 2023 up to and including the time the action was commenced; that he switched his cell phone service provider to T-Mobile, which began sending bills to his Bronx address; and that he changed the address for his banking records with MT&T Bank to his apartment

address, as reflected by June 2024 bank statements. Defendant Roldan was not maintaining two residences as of the date of filing, like the defendants in <u>National Artists</u>. To the contrary, he had **<u>completely abandoned his prior Delaware residence</u>** (which the removing defendants have never established to be a domicile of Roldan, who lived in the Bronx for years prior thereto), to which he has never returned since the date of accident, clearly evidencing the requisite intent to relocate permanently. This intent is further evidenced by Roldan's acknowledged change of address request to the USPS, and his pre-suit receipt of correspondence from the Delaware Department of Elections, acknowledging that he was no longer residing at his former Delaware residence as of the filing of this lawsuit.

If this proof alone were not enough, on November 9, 2023, Travelers Insurance Company, the insurer of defendants Tate and Dot (which also retained defense counsel) issued a check to Roldan for $4,015.07 for the property damage sustained by Roldan's vehicle which was **<u>made payable and sent to Roldan at the Bronx address</u>**.

Indeed, even the removing defendants' insurance company was aware of the fact that defendant Roldan was domiciled in New York as of at least November 9, 2023.

Against this background, it is respectfully submitted that plaintiffs have clearly and convincingly established that diversity of citizenship is lacking, and that this action must, in turn, be remanded to Bronx Supreme Court.

In addition, plaintiff requests permission to file a separate motion for sanctions pursuant to FRCP §11 against attorney Hsu, even after the case is remanded, for his failure to undertake a reasonable inquiry into the viability of defendants' Notice of Removal and continuing to pursue removal despite being provided with irrefutable proof of Roldan's domicile in Bronx County

Respectfully Submitted,

**HECHT, KLEEGER & DAMASHEK, P.C.**

*[signature]*

_____
**JORDAN HECHT, ESQ. (JDH-3142)**
19 West 44th Street – Suite 1500
New York, New York 10036
(212) 490-5700